*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 15, 2018

**BY ECF**

Honorable Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Daniel Jefferson, a/k/a "Ace,"* S1 17 Cr. 123 (LAP)

Dear Judge Preska:

      The Government submits this letter in advance of the July 23, 2018 sentencing of Daniel Jefferson, a/k/a "Ace" (the "defendant"), and in response to the defendant's sentencing submission, dated July 10, 2018 ("Def.'s Mem."). As explained below, the Government respectfully submits that a sentence within the range of 70 to 87 months' imprisonment, as called for by the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), should be imposed in this case.

      **I.**    **Offense Conduct**

      The defendant was for several years one of the primary crack sellers associated with "250": the organized group of experienced drug dealers who operated out of 250 East 176th Street in the Bronx. *See* United States Probation Office's Presentence Investigation Report ("PSR") ¶¶ 14, 28. As such, he initially obtained drug product from—and served as a middle-man supplier for—Damian Saunders, a/k/a "Floss"; then later, he obtained product from Edwin Romero, a/k/a "Yones." *Id.* While supplying the defendant and other sellers at 250, Romero was a leader of "075," which was a larger and similarly well-organized group of drug dealers who controlled whole blocks of territory and engaged in brazen acts of violence throughout the neighborhood around Weeks Avenue, including several intersections along East 176th Street. *Id.* ¶¶ 11-17.

      Since September 2013, the defendant has sustained multiple arrests in or near 250 East 176th Street, including three for criminal possession of a narcotic with intent to sell in September 2013, November 2013, and November 2015. *Id.* ¶ 29. The most recent of these arrests occurred following the execution of a search warrant in the defendant's apartment, where law enforcement recovered twenty-five crack rocks from inside a dresser in the bedroom where the defendant and a child were sleeping. *Id.* ¶¶ 29, 110. Law enforcement also found in the apartment a digital scale and several small Ziploc bags. *Id.* ¶ 110. In addition to the child in the room with the crack cocaine, six other children were inside the apartment. *Id.* After pleading guilty in that

July 15, 2018
Page 2

case, the defendant continued selling at 250, which included a sale in January 2017 to a confidential source. *Id.* ¶ 29. During that sale, the defendant took the customer to a separate apartment in 250 that the defendant and others used as a stash location for drug product. *Id.* ¶ 28.

The defendant and his associates at 250 also possessed firearms, and the defendant knew that those firearms were used to engage in drug-related violence. *Id.* ¶ 30. In one particular incident in November 2014, 250 co-conspirator, Maxamillion Mercado, a/k/a "Bully," used a firearm that belonged to the defendant to shoot an individual who was attempting to steal approximately seventy bags of crack from the defendant's apartment. *Id.* Despite the frequency of such gang- and drug-related shootings committed by members of the 075 and 250 conspiracy, the defendant continued to engage in drug dealing at 250. In fact, his sales continued even after violent conflict between his brother, Dereck Jefferson, a/k/a "Bang," and Eric Rivera, a/k/a "Chucky," culminated in Rivera shooting the defendant's half-siblings in the middle of East 176th Street on June 19, 2016. *Id.* ¶¶ 17, 130. The victims of that shooting were 16 and 17 years old at the time, and were in the line of fire, at least in part, because the defendant and his brother had drug-related conflict with other sellers in the area, including Rivera. *Id.*

## II.     The Defendant's Plea and Applicable Guidelines Range

Pursuant to an agreement with the Government, the defendant pled guilty on September 6, 2017, to one count of conspiring to distribute crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). PSR ¶ 7. In the plea agreement, the parties stipulated that the advisory Guidelines range was 70 to 87 months' imprisonment, based on an offense level of 27 and a Criminal History Category of I. *Id.* ¶ 8. The Probation Office agrees with this calculation. *Id.* ¶¶ 97-112.

## III.    Discussion

### A.  Applicable Law

Although *United States* v. *Booker*, 543 U.S. 220, 264 (2005), held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After performing that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the four legitimate purposes of sentencing, as set forth below, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statement by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

Case 1:17-cr-00123-LAP   Document 554   Filed 07/15/18   Page 3 of 4

July 15, 2018
Page 3

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. Analysis

The Government respectfully submits that a sentence within the 70 to 87-month Guidelines range is appropriate in light of all of the sentencing factors set forth above, and would be sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

*First*, the nature and circumstances of the defendant's offense conduct weigh in favor of the significant term of incarceration called for by the Guidelines. For several years, the defendant and others at 250 East 176th Street sold significant quantities of crack cocaine to drug users and addicts in his neighborhood, thereby profiting from other people's chronic substance abuse. This building and the area around it has long operated as an open drug market where the defendant and his co-conspirators' drug businesses thrived, at least in part, because customers knew they could consistently find the same sellers and product. When their operation fell under the control of Edwin Romero and 075, the scope of the business was even greater. Each 250 seller could move several grams of crack each day, and the group's total sales were staggering. The revenue generated by each seller also contributed to Saunders's and other suppliers' profits, which allowed them to continue supplying the organization year after year. In addition, the defendant benefited from drug-related gun violence, and accepted it as part of his illegal business, even when his younger siblings were victims. In November 2014, one of the defendant's co-conspirators shot a man in the chest to recover and protect the defendant's drug stash. And in June 2016, a gun was turned against the defendant's family. Neither of these incidents caused the defendant to withdraw from the 250/075 conspiracy or to stop selling drugs. The defendant's crack sales and his related contact with firearms are extremely serious offenses that warrant equivalently serious punishment.

*Second*, turning to his history and characteristics, the defendant has sustained multiple drug-related arrests, including one that resulted in a conviction. In that case, law enforcement observed that he had twenty-five crack rocks stored in a room where a child was sleeping and in an apartment with six other children. It is readily apparent that the defendant was comfortable exposing kids to his drug business and its illicit product. Although the defendant's medical conditions may explain his failure to hold a job, it bears noting that prior to his arrest, the defendant received both disability benefits and food stamps, on top of $125,000 in settlements he

July 15, 2018
Page 4

received in 2014 and 2017 as settlements of lawsuits against the New York City Police Department.  PSR ¶¶ 149, 153.  It thus appears that the defendant was not destitute or selling drugs to support a family that would not otherwise have a place to live or food to eat.  Rather, he sold drugs because he wanted to, as a means to benefit himself at the expense of his customers and their families.

*Finally*, a sentence within the Guidelines range is needed to adequately punish the defendant and to demonstrate the seriousness of his conduct, including his own drug sales, his contact with guns, and his participation in a larger organization that caused harms far beyond those of its individual members.  Such a sentence would also promote respect for the law and serve to deter him from future crimes—deterrence that was not achieved with any of his prior arrests, convictions, or sentences.  Looking beyond the defendant himself, in a case like this, where a large neighborhood was long-dominated by a violent gang of drug dealers, there is a significant opportunity for general deterrence—*i.e.*, for others living and committing crimes on and around East 176th Street and Weeks Avenue to learn that membership in groups like 250 and 075 carry a significant risk of a lengthy federal sentence.  Finally, a Guidelines sentence in this case will help protect the public from a quick resurgence of drug activity and gang violence in the neighborhood that armed drug dealers controlled for so many years.

### IV.     Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 70 to 87 months' imprisonment.

                                                        Respectfully submitted,

                                                        GEOFFREY S. BERMAN
                                                        United States Attorney for the
                                                        Southern District of New York

By: _____
                                                        Frank J. Balsamello / Matthew Hellman /
                                                            Anden Chow
                                                        Assistant United States Attorneys
                                                        (212) 637-2325 / -2278 / -2348

cc:     Bryan Konoski, Esq., *counsel for defendant Daniel Jefferson* (by ECF)